IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERITAGE IP LLC, | |
| Plaintiff, | C.A. No. 21-937-LPS |
| v. | **JURY TRIAL DEMANDED** |
| VIVACHEK LABORATORIES, INC., | |
| Defendant. | |

**DEFENDANT VIVACHEK LABORATORIES, INC.'S OPENING BRIEF IN SUPPORT
OF ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Jeremy D. Anderson (Bar No. 4515)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
(302) 652-5070 (Telephone)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Aaron P. Pirouznia
Adil A. Shaikh
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
pirouznia@fr.com
shaikh@fr.com


*COUNSEL FOR DEFENDANT
VIVACHEK LABORATORIES, INC.*

Dated: July 22, 2021

## TABLE OF CONTENTS

**Page(s)**

I.     NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.    SUMMARY OF THE ARGUMENT ..................................................................1

III.   STATEMENT OF THE FACTS ........................................................................2

IV.   ARGUMENT....................................................................................................4

     A.    Legal Standard ......................................................................................4

          1.    This case should be disposed of at the pleading stage through Rule 12(b)(6). ........................................................4

          2.    The Law of 35 U.S.C. § 101. ........................................................5

     B.    The '067 Patent is invalid under 35 U.S.C. § 101 ......................................6

          1.    Claim 1 of the '067 Patent is representative. ...................................7

          2.    *Alice* Step 1: Claim 1 of the '067 Patent is directed to the abstract idea of gathering, analyzing, and communicating information......................................................................8

          3.    *Alice* Step 2: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter. ........................................................................13

     C.    There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage............................15

     D.    Heritage Failed to State a Plausible Claim for Indirect Infringement...............................................................................17

     E.    Heritage IP Failed to State a Plausible Claim for Willful Infringement...............................................................................18

V.    CONCLUSION..................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .................................................................................... *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) .................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ...................................................................................4

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) .................................................................................16

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .................................................................................17

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ........................................................................................4, 5, 9, 12

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) .................................................................................16

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   659 F.3d 1057 (Fed. Cir. 2011) .................................................................................10

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................................6, 16

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ......................................................................................4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ...............................................................................5, 9

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ...................................................................................................4

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ...................................................................................................5

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ........................................................................18

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................11, 16

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...............................................................................16

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)...............................................................................10

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)..................................................................................9

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ....................................................................17

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)..................................................................................5

*Gibbs v. Coupe*,
    No. CV 14-790-SLR, 2015 WL 6870033 ..................................................................3

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)......................................................................................................9

*In re Greenstein*,
    778 F. App'x 935 (Fed. Cir. 2019) ..........................................................................15

*Immersion Corp. v. Fitbit, Inc.*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) .......................................................1, 10, 11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)...............................................................................12

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir 2016)...............................................................10, 12, 16

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)...............................................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)...........................................................................................5, 9

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)...............................................................................12

iii

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016)..................................................................12

*Parker v. Flook*,
   437 U.S. 584 (1978)...................................................................................5

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ............................6

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
   No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)............................6, 8

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..........................................................9, 11, 12

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)...................................................................9

*In re TLI Commc'ns LLC Patent Lit.*,
   823 F.3d 607 (Fed. Cir. 2016)...........................................................2, 14, 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..................................4, 10, 14

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3rd Cir. 2007) .....................................................................3

**Statutes**

35 U.S.C. § 101................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12...............................................................................17

Fed. R. Civ. P. 12(b)(6)........................................................................2, 3

iv

## I.       NATURE AND STAGE OF PROCEEDINGS

On June 29, 2021, Heritage IP LLC filed this lawsuit accusing Defendant VivaChek

Laboratories, Inc. ("VivaChek") of infringement of "at least claim 1" of U.S. Patent No. 6,854,067.

In particular, Heritage IP accuses the VivaChek Ino Sound of utilizing "a microcontroller (e.g.,

Arm Cortex-M0 based microcontroller)." D.I. I at ¶ 17; D.I. 1-2.

## II.      SUMMARY OF THE ARGUMENT

Gathering, analyzing, and communicating information is an abstract concept that is

ineligible for patent protection pursuant to 35 U.S.C. § 101. Claim 1 is fatally flawed because it

claims generic steps that amount to nothing more than an abstract idea: (1) supplying power; (2)

gathering information about the power supply; (3) analyzing the information; (4) communicating

the analysis; and (5) in response, "controlling certain functions" (*i.e.*, any function) of a

microcontroller "accordingly" (*i.e.*, in any way). Claim 1 is thus precisely the type of claim that is

patent-ineligible under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014), and

its progeny. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)

(power control method ineligible where directed to "gathering and analyzing information").

All of the claims of the '067 Patent recite nothing more than gathering, analyzing, and

communicating information—acts that humans have long-performed without the assistance of

computers—with the simple instruction to apply this concept using generic computer technology.

Using existing technologies to implement this concept is not a technological improvement, an

inventive way of applying conventional technology, or even new as of the priority date of the '067

Patent. Moreover, none of the claims recites any specific hardware or software; instead, the

specification discloses only that the alleged inventions use generic computer components, such as

a "microcontroller," "processor," "power supply" and "power on reset circuit" ("POR"), to

perform conventional activities. In other words, the generic components do not supply an inventive

1

concept and instead "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

Resolving this issue does not require discovery or claim construction. Heritage IP's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid wasting judicial and party resources unnecessarily litigating invalid patents, VivaChek requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

## III.   STATEMENT OF THE FACTS

The '067 Patent is entitled "Method and System For Interaction Between a Processor and a Power on Reset Circuit to Dynamically Control Power States in a Microcontroller" and was filed June 22, 2001.

Unwanted power-level variations in a microcontroller can have negative consequences, such as the loss of information or reduced performance. *See* '067 Patent at 1:44–62. The '067 Patent admits that numerous prior art techniques can control power levels, including by using processing resources in the microcontroller (*see id*. at 2:4–26) or dedicated circuits called "Power On Reset (POR) circuits" (*id*. at 1:23–32). Microcontrollers conventionally controlled power levels during initial boot-up by using POR circuits to maintain the microcontroller in a reset state until certain parameters were met. *Id*. at 1:27–31. After boot-up, microcontrollers controlled power levels by using processing resources to "sense, analyze, and react to . . . instability." *Id*. at 2:4–16. The '067 Patent admits that these "sensing, analyzing, and reacting" steps were conventional, and that they were typically performed either by "dedicating existing system resources, internal to the microcontroller" or by "providing additional resources, e.g., adding them into the microcontroller as build-ons." *Id*. at 2:4–17.

Although the conventional prior art rectified the power stability issues, the '067 Patent suggests that there were tradeoffs. *See id*. at 1:63–2:3. The '067 Patent states that using existing

2

system resources "removes circuitry from other possible applications" and can expend additional power. *Id.* at 2:4–9. And adding "build-ons" to address power system instability "makes the microcontroller more expensive to manufacture." *Id.* at 2:13–17.

To cure the alleged drawbacks in the prior art, the '067 Patent purports to improve microcontroller efficiency by (1) providing "dynamic power control" or programmatic "optimization," or (2) relocating the admittedly known functions of "sens[ing], analyz[ing], and react[ing] to post-booting power instability" to different components (e.g., to a POR circuit). *See, e.g.*, *id.* at 2:35–57; 6:63–67.

In short, Claim 1 is directed to the very same "sensing, analyzing, and reacting" steps that the '067 Patent admits were performed by conventional microcontrollers. And Claim 1 allows for the "sensing," "determining," and "controlling" steps to be performed in any manner using any components. None of these steps are functionally linked to Claim 1's "wherein" clauses, which merely recite that the microcontroller components are connected. Claim 1 does not recite a step for controlling a microcontroller's power supply—much less, any specific "dynamic" or "optimized" technique that differs from the admitted prior art.

The applicant described the purported invention only at a high-level of generality. For example, representative Claim 1 of the '067 Patent describes generic components such as a: (1) "microcontroller," (2) "processor," (3) "switched mode pump power supply" and (4) "power on reset circuit," performing the generic functions of:

| Recited Component | Admission of Conventionality |
|---|---|
| Microcontroller | 1:23–24 ("Microcontrollers have embedded processors, memories, power sources, and other circuits"). |
| Processor | 1:23–24 ("Microcontrollers have embedded processors, memories, power sources, and other circuits"). |
| Switched mode pump power supply | 1:38–43 ("The power for microcontrollers is typically provided by a switch mode pump (SMP) . . . POR circuits, conventionally, are separate from SMP control . . ."); 5:5–9 ("Switch mode power |

3

| | supplies, also called switch mode pumps (SMP) routinely provide power to microcontrollers, into which they are integrated. SMP devices are well known in the art."). |
|---|---|
| Power on reset circuit | 1:24–27 ("Power On Reset (POR) circuits are typically used in microcontrollers . . ."); *id.* at 1:40–43 ("POR circuits, conventionally, are separate from SMP control . . ."). |

Claim 1 does not recite that any of the above hardware components' functions other than according to its conventional function. In fact, the only component that performs an affirmative step in Claim 1 is the switch mode pump power supply, which is required only to supply a power state to the microcontroller (i.e., its conventional function). '067 Patent at 5:5–8.

## IV.    ARGUMENT

### A.    Legal Standard

#### 1.    This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015 (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point

4

of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## 2.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; <u>*Bilski*</u>, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## B. The '067 Patent is invalid under 35 U.S.C. § 101

The claims of the '067 Patent are invalid under § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of gathering, analyzing, and communicating information, and none contains an "inventive concept sufficient to ensure that the patents in practice amount to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added).

### 1.  Claim 1 of the '067 Patent is representative.

Claim 1 of the '067 Patent is representative of the claims.[1] *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea"); *see also Alice*, 573 U.S. at 224–26 (invalidating over 200 claims across four patents based on two representative claims). The remaining claims of the '067 Patent recite the same abstract idea: gathering, analyzing, and communicating information. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis).

Claim 1 recites:

> 1. In a microcontroller with an embedded processor, a switched mode pump power supply and power on reset circuit, a method of dynamically controlling a plurality of power stability functions for said microcontroller, said method comprising:
>
>> a) **supplying a power state** to said microcontroller from said switched mode pump power supply, wherein said processor and said power on reset circuit are interconnectedly coupled, and wherein said switched mode pump power supply is interconnectedly coupled with said power on reset circuit and responsive to signals therefrom;
>>
>> b) **sensing a power state** condition of said power state;
>>
>> c) **determining a suitability status** of said power state condition;
>>
>> d) **communicating said suitability status** between said

---

[1] As is the case here, where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

power on reset circuit and said processor;

e) **controlling certain functions of said microcontroller accordingly**.

'067 Patent, Cl. 1 (emphasis added). The independent claims each recite the same limitations in a method (claims 1 and 20) and system (Claim 13) form. Each claims a method or system performing: "supplying" or "ascertaining" a "power supply"; "sensing" or "determining" a "power state"; "communicating" power states; and "controlling" certain features. The differences between these claims are insubstantial with respect to eligibility, as each are drawn to the same abstract idea. They also do not alter the eligibility analysis because they recite token post-solution elements performed by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225.

None of the dependent claims' concepts depart from the abstract idea of gathering, analyzing, and communicating information. The only differences relate to token or insignificant pre- or post-solution activity, such as:

| Pre- or Post-Solution Activity | Claims |
| --- | --- |
| "Dynamically programming" or "controlling" power on a circuit | 2, 13, 20 |
| Power circuit and processor are "interconnected via a bus" | 3, 9, 17 |
| Certain steps accomplished by a "power on reset circuit" | 4, 14 |
| Performing voltage supply calculations, changes, and related analysis | 6–9, 11–12, 16–19 |
| Performing certain steps by a bus | 10 |

Claim 1 is thus representative for the § 101 analysis. *See PPS Data*, 2019 WL 1317286, at *5.

### 2.     *Alice* Step 1: Claim 1 of the '067 Patent is directed to the abstract idea of gathering, analyzing, and communicating information.

Claim 1 of the '067 Patent is directed to an unpatentable, abstract idea because it claims nothing more than the "longstanding," "routine," and "conventional" concept of gathering, analyzing, and communicating information. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611. In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus"

of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). Claim 1 comprises five basic steps: (a) supplying a power state to a generic microcontroller using a conventional component (*i.e.*, a switched mode pump power supply); (b) sensing a power state condition of (*i.e.*, gathering information regarding) said power state; (c) determining a suitability status of (*i.e.*, analyzing) said power state condition; (d) communicating the suitability status between conventional components (*i.e.*, a POR circuit and a processor); and (e) "controlling certain functions of said microcontroller accordingly." Claim 1 captures nothing more than the steps of "sensing," analyzing, "communicating," and controlling—a series of steps for data gathering, analysis, and communication, and a concluding step that amounts to little more than "doing something."

The Federal Circuit has consistently held that the steps of gathering, analyzing, and communicating information—alone, or in combination—are abstract ideas. *See, e.g., Electric. Power Grp.*, 830 F.3d at 1354 ("gathering and analyzing information of a specified content, then displaying the results" is abstract); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–42 (Fed. Cir. 2017) ("collecting, displaying, and manipulating data" is abstract*); Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records'" are abstract); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258–59 (Fed. Cir. 2016) ("wirelessly communicating regional broadcast content to an out-of-region recipient" is abstract); *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368

(Fed. Cir. 2017) ("collecting, analyzing, manipulating, and displaying data" is abstract); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) ("collecting information, including when limited to particular content" is abstract); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018) ("information as such is an intangible, and … collecting, analyzing, and displaying that information, without more, is an abstract idea"). Other courts have found similar patent claims to be ineligible.

In *Electric Power Group*, the Federal Circuit held that a power control method—a "method of detecting events on an interconnected electric power grid"—was invalid under Section 101. *Id.* at 1352. Like Claim 1 of the '067 Patent, the invalidated claim in *Electric Power Group* recited quintessential abstract data gathering and analysis steps.

|  | **Claim Held Invalid in *Electric Power Group*** | **Claim 1 of '067 Patent** |
|---|---|---|
| Information-gathering steps | "receiving a plurality of data streams … collected in real time at geographically distinct points over the wide area of the interconnected electric power grid" "receiving data from other power system data sources" | "sensing a power state condition of said power state" |
| Information analyzing steps | "detecting and analyzing events in real-time from the plurality of data streams" "deriving a composite indicator of reliability that is an indicator of power grid vulnerability" | "determining a suitability status of said power state condition" |
| Communication Steps | "accumulating and updating the measurements from the data streams and the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid" | "communicating said suitability status between said power on reset circuit and said processor" |

*Comparing Elec. Power Grp.*, 830 F.3d at 1352 (Claim 12) *with* '067 Patent, Claim 1. The information-gathering, analyzing, and communication steps recited in Claim 1 of the '067 Patent are directly analogous to—if not more abstract than—those held patent-ineligible in *Electric Power Group*.

The fact that Claim 1 limits the data gathering, analysis, and communication to a power state context does not make the claim any less abstract, as restrictions limiting the kind of information gathered are immaterial. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also id.* ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *SAP*, 898 F.3d at 1168 (rejecting defendant's contention that collecting and analyzing information from a particular source can render the claimed process non-abstract). In short, claims must do more than "receiving, interpreting, storing and responding" to information to satisfy § 101.

The functional nature of Claim 1's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. In *SAP America*, the Federal Circuit asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." *SAP*, 898 F.3d 1161, 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect

that itself is the abstract idea and merely invoked generic processes and machinery."); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) (holding claims ineligible despite the presence of processor and multiple components adapted to perform certain functions). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co.*, Ltd., 855 F.3d 1322, 1326 (Fed. Cir. 2017). Claim 1 of the '067 Patent is purely functional. None of the claimed functions—"supplying, sensing, determining, determining, and controlling"—is tethered to any specific means or methods.

Claim 1 thus differ from the claims that the Federal Circuit has held to be eligible. Eligible claims disclose specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated: "[i]mproving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '067 Patent. It does not require a specific or unconventional technique, nor does it identify any specific improvement to computer functionality, much less an unexpected way of effecting such an improvement.

The claimed advance of the claims is the application of the long-standing concept of gathering, analyzing, and communicating information applied on a generic computer. Accordingly, Claim 1 fail *Alice* step one. *See Alice*, 134 S. Ct. at 2355.

3.  *Alice* **Step 2**: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.

Because Claim 1 of the '067 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

The abstract steps of gathering, analyzing, and communicating information cannot themselves supply an inventive concept sufficient to salvage the claim. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Each of the claimed steps of "sensing a power state condition," "determining a suitability status of said power condition," and "communicating said suitability status between said power on reset circuit and said processor" can be performed by any conventional hardware component already disclosed as prior art in the '067 Patent. Indeed, the '067 Patent admits that no new hardware is needed to perform these steps. '067 Patent at 3:33–37 ("Advantageously, the present embodiment utilizes only system resources already designated for design POR requirements and microcontroller control functions, thus requiring no additional systems."). The hardware components in Claim 1 cannot plausibly provide

13

an inventive concept because each recited component—a microcontroller, a processor, a switched mode pump power supply, and a POR circuit—is admitted to be conventional in the background of the '067 Patent, as discussed above.

Although the stated goal of the '067 Patent is to reuse existing microcontrollers, expend existing power resources, and reduce costs ('067 Patent, 2:4–16), not a single **technical** improvement is discussed, much less claimed. Claim 1 requires a "microcontroller," "processor," "switched mode pump power supply" and "POR circuit." No special programming or improved components are claimed or required. Indeed, the specification confirms this, acknowledging that prior art solutions existed and used the same components. *Id.* at 1:63–2:3; 2:4–16. The only component that is recited in Claim 1 and required to perform an affirmative action is the switched mode pump power supply, which merely "suppl[ies] a power state to said microcontroller." But, this function is expressly admitted in the background of the '067 Patent to be the conventional function of a switched mode power supply. '067 Patent at 5:5–8 ("Switch mode power supplies, also called switch mode pumps (SMP), routinely provide power to microcontrollers . . . SMP devices are well known in the art."). Moreover, the mere communication of information between two components is abstract and cannot supply an inventive concept to an abstract patent claim. *BSG Tech.*, 899 F.3d at 1290.

Claim 1 also fails to include any of the purported inventive concepts identified by the '067 Patent's specification. For instance, Claim 1 does not recite any structural components or method steps that "dynamically" control a microcontroller's switch mode pump or "optimize" microcontroller power states—much less, limit *how* these functional results are achieved. Because Claim 1 does not recite these features, they are irrelevant to the eligibility analysis. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 2018-1763, 2020 WL 4380419, at *5 (Fed. Cir. July 31,

2020) ("We have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the Mayo/Alice analysis."); *Two-Way Media*, 874 F.3d at 1338; *see also Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)) (after determining that a claim is directed to a judicial exception, "we then ask, '[w]hat else is there in the claims before us?'").

Claim 1 is nothing like those held by the Federal Circuit to provide an inventive concept. In *Amdocs*, for example, the Federal Circuit held that the claimed invention was patentable, because, while the elements individually required "arguably generic components," they involved an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)" and "depend[ed] upon the invention's unique distributed architecture." *Amdocs (Israel) Ltd. v. Openet Telecom*, Inc., 841 F.3d 1288, 1300-03 (Fed. Cir. 2016); *see also BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" to provide a technology-based solution). Unlike *Amdocs* and *Bascom*, Claim 1 does not solve a technological problem, nor does it present a technological solution or technical improvement.

Thus, because the claims do not improve the functioning of computers or technology, their limitations are insufficient to add "significantly more" to the abstract idea and thus lacks any "inventive concept." *See Alice*, 134 S. Ct. at 2359-60.

### C.   There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage.

The issue of patent eligibility is ripe for the Court's consideration because there are no factual or claim construction issues precluding resolution on the pleadings. This case is markedly

different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

Here, Heritage IP cannot offer a plausible claim construction that would materially affect the eligibility analysis. Claim 1 is drafted without reciting *how* its generic data gathering and analysis steps are performed. Claim construction is not a vehicle to remedy such drafting mistakes. *See Fast 101*, 424 F. Supp. 3d at 392 (rejecting patentee's attempt to salvage abstract patent claim by reading in limitations that were "simply implausible"); *Search & Soc. Media Partners v. Facebook, Inc.*, No. 17-1120, 2019 WL 581616, at *3 (D. Del. Feb. 13, 2019) (noting that the Court need not "assume an implausible claim construction" even "for purposes of a Rule 12 motion"); *Multimedia Plus, Inc. v. Playerlync, LLC*, 198 F. Supp. 3d 264, 267 (S.D.N.Y. 2016), aff'd, 695 F. App'x 577 (Fed. Cir. 2017) ("Where the claims of the patent are straightforward and no components are opaque such that claim construction would be necessary to flush out its contours, claim construction is not necessary to reveal any material legal issues and would not be a wise use of judicial resources.") (internal citations and quotations omitted). Nor can Heritage IP

salvage Claim 1 by trying to read in generic notions of "optimization" or "programmatic control." These concepts are no more concrete than the already-recited steps of gathering, analyzing, and communicating information regarding a power supply. *See In re Gopalan*, 809 F. App'x 942, 945 (Fed. Cir. 2020) ("ideas of collecting and organizing data and the mathematical concept of optimization" are abstract); *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1175 (D. Colo. 2015), aff'd, 669 F. App'x 571 (Fed. Cir. 2016) (finding, on Rule 12(b)(6) motion, that "optimization of resources in view of real-time data" is an abstract idea).

It should also be noted that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

### D.    Heritage Failed to State a Plausible Claim for Indirect Infringement

Heritage IP fails to plead that VivaChek: (1) had pre-suit knowledge of the asserted patent; (2) knows whether the third party microcontroller (the "Arm Cortex-M0 based microcontroller") infringes the asserted patent; or (3) took any affirmative act with intent to encourage others to infringe the asserted patent. Each of these deficiencies is an independently sufficient basis for this Court to dismiss Heritage IP's indirect infringement claims.

"To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012).

17

This includes a showing that "the accused inducer took an affirmative act to encourage infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

Heritage IP does not allege any pre-suit knowledge of the asserted patent. The Court should thus dismiss Heritage's claims for indirect infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ("liability for inducing infringement attaches only if the defendant knew of the patent"). Heritage IP further failed to allege that VivaChek knows whether the Arm Cortex-M0 based microcontroller infringes the asserted patent. Heritage IP's bare-bones indirect infringement allegations fail to support a plausible inference that VivaChek knows the inner workings of a submodule of a chip that it did not design and does not manufacture. Further, Heritage IP has not pleaded that VivaChek took affirmative acts with intent to encourage others to infringe the asserted patent.

Because Heritage IP has not pleaded that VivaChek had pre-suit knowledge of the asserted patent, knows whether the third party microcontroller infringes, or acted with intent to encourage infringement, Heritage IP's indirect infringement claims fail as a matter of law. The Court should thus dismiss Heritage's indirect infringements claims as to the asserted patent.

### E.  Heritage IP Failed to State a Plausible Claim for Willful Infringement

Heritage IP's willful infringement claims similarly fail because Heritage IP has failed to plead that VivaChek had pre-suit knowledge of the asserted patent or that VivaChek knows whether the third party microcontroller infringes the asserted patent.

"[T]o sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-

18

suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Valinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082, 2018 WL 2411218, at *13 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901. This Court has held that allegations of willfulness based solely on post-filing conduct are therefore insufficient. *Express Mobile, Inc. v. DreamHost LLC*, No. 18-1173, 2019 WL 2514418, at *2 (D. Del. June 18, 2019) (amended complaint alleging only post-filing knowledge of asserted patents "fail[ed] to meet the pleading standard for willful infringement, which requires allegations of willful conduct prior to the filing of the claim"); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) ("in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct because a patentee must have a good faith basis for alleging willful infringement") (citations omitted).

The Court thus should dismiss Heritage IP's claims for willful infringement.

## V.      CONCLUSION

For the foregoing reasons, VivaChek respectfully requests that the Court dismiss (1) Heritage IP's Complaint for failure to state a claim upon which relief can be granted, (2) Heritage IP's claims of indirect infringement, and (3) Heritage IP's claims for willful infringement. Because leave to amend would be futile, VivaChek requests dismissal with prejudice.

Dated:  July 22, 2021

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*

Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Aaron P. Pirouznia
Adil A. Shaikh
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
pirouznia@fr.com
shaikh@fr.com

**COUNSEL FOR DEFENDANT**
**VIVACHEK LABORATORIES, INC.**